**In re REQUEST FOR JUDICIAL ASSISTANCE FROM THE SEOUL DISTRICT CRIMINAL COURT, SEOUL, KOREA.**

No. M–76–151.

United States District Court,
N. D. California.

Feb. 25, 1977.

Mark Horlings, James Frolick, San Francisco, Cal., for the Seoul Criminal Court defendant.

James L. Browning, Jr., U. S. Atty., William T. McGivern, Jr., Asst. U. S. Atty., San Francisco, Cal., for the U. S. Government.

## ORDER

CONTI, District Judge.

This matter comes before the court after a slow progress through judicial process. Following several delays incident to consideration of the matter by each judge to whom this request for assistance rotated, an order denying assistance was entered by Chief Magistrate Goldsmith on December 20, 1976. The United States, acting on behalf of the Republic of Korea, moved to set aside this order and to order production of the records requested. Before the court could act, however, the Korean warrant underlying the request expired. The matter was continued for approximately thirty days pending receipt of a new warrant and request. On its arrival, the United States moved *ex parte* for an order shortening time, which was granted so as to avoid the necessity of yet more delay attendant upon familiarization with this matter by yet another judge. Local Rule 112. The new warrant appears virtually identical with the expired warrant; the issues have been adequately briefed, argued and supported by expert testimony. Thus, no good reason exists why the court should not resolve this dispute immediately.

The Seoul District Criminal Court, Seoul, Korea, has requested the assistance of the court in procuring certain financial records from the Bank of Tokyo of California relating to Mr. Young Sool Shin, a citizen of Korea. Respondent Young Sool Shin has been under investigation by Korean authorities for violations of Korea's foreign exchange laws; he was arrested, convicted and sentenced on September 27, 1976. The case is now on appeal in Korea.

According to expert testimony in this matter, new evidence such as that requested may be submitted to the appellate court, but a request for that purpose properly should originate with the appellate prosecutor and not with the trial court prosecutor. It is not known whether the records requested are needed in connection with the appeal or are needed in connection with a continuing investigation that might lead to new charges against respondent. The Korean warrant is ambiguous on this point, simply asserting a need for this evidence.

The warrant requests "Ledger of account under the name of Young Sool Shin, deposit slips and checks showing all transactions including the country of currency, signer of checks, and country of origin and destination of transactions." A statement by bank authorities giving this information is acceptable in lieu of the records themselves.

## A. *Order of Chief Magistrate.*

■ The United States Attorney maintains that Chief Magistrate Goldsmith exceeded his authority in denying the requested assistance. The court agrees.

Under terms of 28 U.S.C. § 1782, only a district court may order judicial assistance. Local Rule 505(1) requires that duties devolved upon a magistrate by a district judge "shall be exercised only upon written order of reference precisely setting forth the subject matter and terms of the reference." Judge Burke's order appointing Chief Magistrate Goldsmith as Commissioner in this matter directed him "to take all steps necessary to the purposes of this order *in conformity with* the request of the Seoul District Criminal Court." (Emphasis added.) This language suggests that Judge Burke intended the request to be honored, and that the Chief Magistrate's function was intended to be administrative only. . Since the discretion to order or deny assistance is lodged in the district court, the order of Chief Magistrate Goldsmith denying assistance must be set aside. The court will regard his order as proposed findings and recommendations to which the United States attorney has made objection.

## B. *Effect of Korean Conviction.*

Section 1782 limits production of information to that intended "for use in a proceeding in a foreign or international tribunal." Counsel for respondent argue that the Korean conviction of respondent deprived the warrant's requestor, Mr. Chin Kang Sak, Prosecuting Attorney of the Seoul District, of all jurisdiction in the case and removed whatever need he may have had for the information. .

■ The fact that this information may not be usable in the court which issued the underlying warrant is not dispositive under United States law. There is no such requirement in section 1782. As the Ninth Circuit Court of Appeals made clear in *In re Letters Rogatory from the Tokyo District, Tokyo*, 539 F.2d 1216, 1219 (9th Cir. 1976), requests for assistance may be honored so

long as that assistance is not "unrelated" to "judicial or quasi-judicial controversies."

■ Further, inasmuch as additional charges against respondent may be contemplated by the Korean prosecutor and the prosecutor has reiterated a need for it, the court cannot find that the information is no longer useful to Korean authorities.

■ Whatever technical defects in the warrant may exist should be raised before a Korean court, which is better qualified to adjudicate disputes arising from Korean procedural law. It is sufficient for this court that the information is intended for use in a judicial or quasi-judicial controversy and that the procedures followed comport with our notions of due process of law.

## C. *Lack of Reciprocal Treaty.*

■ When requested assistance is granted, it is usually by reason of comity; reciprocal treaties or agreements are not required, though the existence of reciprocal practices (or lack of them) may influence a court's decision. *See, e. g., In re Letters Rogatory from the Tokyo District, Tokyo, supra* ; *The Signe*, 37 F.Supp. 819 (D.C.La. 1941).

■ In fact, Congress intended by its 1964 amendments to Section 1782 to enable the United States to take the initiative in rendering assistance, thus hopefully stimulating reciprocal aid. See S. Rep. No. 1580, 88th Cong., 2d Sess., *reprinted in* [1964] U.S. Code Cong. & Admin.News 3782.

■ There is no evidence in the record that Korea has refused to provide similar assistance to United States courts when requested. Accordingly, the court will disregard the lack of a reciprocal treaty.

## D. *Fiscal and Penal Nature of Korean Proceeding.*

Section 1782 does not by its terms exclude assistance in matters relating to enforcement of fiscal or penal laws of a foreign county. In the *Tokyo* case, *supra,* the Ninth Circuit Court of Appeals dissolved a stay and ordered taking of testimony re-

quested by Japanese authorities in aid of their investigation into alleged violations of Japanese income tax laws.

The chief policy objection raised against disclosure by respondent is that revelation of such information to foreign courts will inhibit deposits in American banks by foreign nationals who now rely on confidentiality to mask their activities. An affidavit from a Bank of Tokyo of California officer asserts that a policy of disclosure on request would lead to loss of some deposits.

■ While it has been true that United States courts generally do not enforce penal or fiscal *judgments* of foreign courts, it does not follow that they should not afford assistance to a foreign country which desires to enforce its own laws against its own citizens in its own country. In view of the Ninth Circuit's lead in the *Tokyo* case and the broad coverage of section 1782, disclosure seems the preferred position.

### E. *Bank-Customer Privilege.*

Section 1782(a) permits any person to claim "any legally applicable privilege." Respondent claims a privilege as a California bank depositor, pursuant to California law, to the confidentiality of his bank records.[1] It is not clear from the text of the statute, legislative history or case law whether respondent may assert a novel state privilege such as this. However, case law in this circuit favors its recognition.

The leading case is *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960), wherein the Court of Appeals held that an attorney might assert his state-defined attorney-client privilege against an I.R.S. summons compelling disclosure. The opinion has been construed by some as not establishing a rule that federal courts *must* look to state law in all such cases, but it was given a rigorous interpretation by this court in *McKillop v. Regents of the University of California*, 386 F.Supp. 1270 (N.D.Cal.1975). In the course of holding that the University's privilege for official information protected tenure

files from discovery by a disgruntled professor, Judge Renfrew said, after analysis, "*Baird* cannot be limited to the specific facts of that case nor to the precise privilege considered therein; rather it sets forth a principle applicable to privilege questions in general," which is that "the law of the forum state controlled." *Id.* at 1273.

Assuming *arguendo* that respondent may claim this privilege, the two chief California cases on point are *Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, 125 Cal.Rptr. 553, 542 P.2d 977 (1975), and *Burrows v. Superior Court*, 13 Cal.3d 238, 118 Cal.Rptr. 166, 529 P.2d 590 (1974). In *Valley Bank*, a civil case, the California Supreme Court ruled that no statutory bank-customer privilege exists as such, and that the courts are not free to create new privileges as a matter of judicial policy. However, it found in the California Constitution's right of privacy and right to be free of unreasonable searches and seizures sufficient protection to create a sort of quasi-privilege. Absent compulsion of legal process, it held, information revealed by a customer to his bank cannot be disclosed. 15 Cal.3d at 656–57, 125 Cal.Rptr. 553, 542 P.2d 977.

"Legal process" in *Valley Bank* involved balancing the civil litigants' rights to discovery against the bank customers' right of privacy. The bank was required to notify the customer of the discovery proceedings and to afford the customer a chance to object or seek a protective order. The trial court's discretion to grant discovery was affirmed, but the California Supreme Court suggested that lower courts, "so far as possible, accommodate considerations of both disclosure and confidentiality." *Id.* at 658, 125 Cal.Rptr. at 556, 542 P.2d at 980.

This civil procedure would seem applicable in this case, despite the criminal prosecution in Korea, since section 1782 specifies that to the extent the district court does not specify otherwise in its order, the Federal Rules of Civil Procedure govern.

In *Burrows*, a criminal case, the California Supreme Court did not specify any oth-

---

1. The United States Supreme Court has ruled that bank customers have no such privilege under federal law. *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

er procedure, did not require a search warrant, and simply referred to the requirement that some form of judicial process precede seizure of the information sought (copies of bank records). It did, however, discuss several federal cases with seeming approval in which the information was obtained by summons or subpoena enforced by judicial order. 13 Cal.3d at 242–45, 118 Cal.Rptr. at 168–71, 529 P.2d at 592–95.

Even were the court to recognize the California quasi-privilege of bank record confidentiality, therefore, it should nonetheless uphold the subpoena issued in this matter. Respondent is aware of the pendency of the matter; he is exercising his opportunity to object; a protective order presently protects his privacy interest; the information is relevant. Against respondent's privacy and Fourth Amendment interests must be balanced the strong federal interest in harmonious foreign relations, and the interest directly served by the statute, i.e., international cooperation in litigation. "Judicial process" seems adequately observed.

### F. Other Objections to Disclosure.

Respondent claims misconduct in that he asserts the United States Attorney attempted to evade legal process by obtaining the information informally. The record does not support this claim.

Respondent also asserts that the subpoena is burdensome and oppressive in that it is not limited to any time period, is not restricted to relevant information, and concerns an account which respondent maintained simply as president of a corporation. By nature of the charges, any deposits made abroad by respondent in whatever capacity seem relevant, given California's policy of permitting discovery whenever the information is reasonably calculated to reveal admissible evidence. The Korean judgment entered against respondent refers to events occurring between April, 1957, and late February, 1975. The unlimited time period covered by the warrant, therefore, does not seem excessive or unduly intrusive into respondent's privacy.

All other grounds raised by respondent for refusing Korea's request for assistance have been considered and are rejected as without merit.

Accordingly, good cause for honoring Korea's request for judicial assistance having been shown and no valid reason for withholding such assistance appearing to the court, it is ordered:

(1) That the order of Chief Magistrate Goldsmith entered in this matter on December 20, 1976, be set aside; and

(2) That the described bank records of the Bank of Tokyo of California, Japan Center Branch, San Francisco, or a statement by bank authorities giving the desired information, be produced forthwith pursuant to this court's subpoena.