**In re LETTER OF REQUEST FROM the LOCAL COURT OF PFORZHEIM, DIVISION AV, FEDERAL REPUBLIC OF GERMANY, (NO. 5 C 34183).**

**No. G89–30046 Misc.**

United States District Court,
W.D. Michigan.

Dec. 21, 1989.

Charles E. McCallum and Valerie P. Simmons, from the law firm of Warner, Norcross & Judd, Grand Rapids, Mich., for respondents.

John A. Smietanka, U.S. Atty., and Michael L. Shiparski, Asst. U.S. Atty., Grand Rapids, Mich., for U.S.

## OPINION

HUGH W. BRENNEMAN, Jr., United States Magstrate.

This action involves a Request for International Judicial Assistance. The request is pursuant to a Letter Rogatory, issued by the above-named court on October 9, 1985, and under the Convention of the Taking of Evidence in Civil or Commercial Matters, signed at the Hague on March 18, 1970, which entered into force between the United States of America and the Federal Republic of Germany on October 7, 1972, 23 UST 2555; TIAS 7444. The Local Court of Pforzheim, Division AV, has requested judicial assistance from this court in the procurement of a blood sample from Mr. Rick Brunke, in order to facilitate a paternity suit currently pending in the West German court, to which Mr. Brunke is a party.

The parties have been pursuing this matter for some time prior to the involvement of this court. Rick Brunke first received notice of the German paternity action and the request for his blood sample by letter, dated November 12, 1985, from then Assistant United States Attorney Anne Vandermale Tuuk of this district. Apparently, Mr. Brunke agreed to voluntarily comply with the request during a February 6, 1986 telephone conference. On August 8, 1986, Rick Brunke's wife advised the United States that her husband had complied with the request for his blood sample.

In April 1988, it was determined that Rick Brunke had not complied with the German court's request for his blood sample. On January 31, 1989, after confirming that the German paternity action was still pending, the Department of Justice issued a request for expedited action by the United States Attorney's Office for the Western District of Michigan.

Consequently, on March 22, 1989, pursuant to the Letter Rogatory, the United States petitioned this court under 28 U.S.C. § 1782 for an order requiring Rick Brunke

to submit to the extraction of a blood sample for use in the German paternity action.

On April 12, 1989, the Hon. Benjamin F. Gibson of this court appointed the undersigned magistrate as a Commissioner pursuant to § 1782(a) "for the purpose of rendering judicial assistance as requested" by the German court.

Thereafter, Mr. Brunke was ordered to appear on June 5, 1989, before the magistrate and show cause why he should not be compelled to provide the blood sample requested by the German court's Letter Rogatory. Shortly after service of the show cause order, Mr. Brunke agreed to cooperate and to voluntarily provide a blood sample. Accordingly, the show cause hearing was adjourned several times to accommodate the coordination of medical and shipping requirements, Mr. Brunke's employment schedule, and confirmation from the examining German physician.

Ultimately, the blood sample was never provided. Consequently, the show cause hearing was finally held on November 6, 1989. Mr. Brunke now refuses to submit a blood sample and objects to these proceedings.

Title 28, U.S.C., § 1782 provides:

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

(b) This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

■ The U.S. Attorney contends that the commissioner's authority is ministerial in nature and that the commissioner is without discretion to deny the requested order. *See In Re Request for Judicial Assistance from the Seoul District Criminal Court, Seoul, Korea,* 428 F.Supp. 109, 112 (N.D. Cal.1977), *aff'd,* 555 F.2d 720 (9th Cir.1977).

I disagree that this is necessarily so. The discretion of the district court itself is undisputed, and the scope of the derivative authority of the commissioner is fashioned by the order of the district court. This is apparent from a reading of § 1782(a).

The holding in the *Seoul* case, *supra,* is not inconsistent with this conclusion. The court in that case recognized that the extent of a commissioner's authority is determined by the referral order. It found that the "language" of the order in that case "suggest[ed] ... that the Chief Magistrate's function was intended to be administrative only," and that the discretion to order or deny assistance remained lodged in the district court. 428 F.Supp. at 112.

In this instance, the court appointed the undersigned as commissioner for the purpose of rendering "judicial assistance," words not found in the *Seoul* order and words which on their face clearly convey a measure of discretion exceeding that required for a ministerial action.

Second, by naming as commissioner in this case a United States magistrate, the court has chosen to place this matter in the

hands of a judicial officer of the court authorized to perform judicial functions. *See,* 28 U.S.C. § 636(b); W.D.Mich. R. 8.

Finally, the court's order does not itself require Mr. Brunke to produce the blood sample, which it was clearly within the authority of the court to require. See § 1782(a). Since the court chose not to directly order production of a blood sample, but rather directed a judicial officer to provide judicial assistance, the appropriate inference is that it lies within the discretion of the undersigned to issue or deny the order.

Mr. Brunke argues that the order should not issue since this court has no contempt power to enforce it. The appropriateness of a particular type of sanction, however, is not determinative of whether the order should issue. Mr. Brunke concedes that by failing to comply with such an order he may subject himself to issue or claim preclusion or other "possible penalties if he fails to comply with a court order." Thus, without determining at this time what the appropriate sanctions might be, either in this court or in the German court, for Mr. Brunke's failure to comply with this court's order, it appears that sanctions would exist.

I find no reason why an order compelling Mr. Brunke to provide a blood sample should not issue. Such an order is not oppressive or unduly burdensome, nor does it violate any substantive or due process right of Mr. Brunke. On the contrary, the requirement of providing a blood sample in a paternity action is a routine one. *See, e.g.,* M.C.L.A. § 722.716; *Bowerman v. MacDonald,* 431 Mich. 1, 427 N.W.2d 477 (1988); *People v. Stoeckl,* 347 Mich. 1, 78 N.W.2d 640 (1956). Mr. Brunke has offered no substantive objections to providing a blood sample, and has on previous occasions expressed a willingness to do so. Under these circumstances, I perceive no unfairness in granting the relief sought by the Letter Rogatory.

The order will issue.