2 F.3d 11
 62 USLW 2120, 38 Fed. R. Evid. Serv. 604
 In re Subpoena Issued to Mary ERATO Pursuant to a Request of
the Netherlands Pursuant to the Treaty Between the United
States of America and the Kingdom of the Netherlands on
Mutual Assistance in Criminal Matters and 28 U.S.C. Sec.
1782 in the Matter of John Michele Erato and Victoria Erato-Aeillo,
UNITED STATES of America, Petitioner-Appellee,
v.
Mary ERATO, Witness-Appellant,
John Michele Erato and Victoria Erato-Aeillo, Respondents.
 No. 1271, Docket 93-6121.
 United States Court of Appeals,
Second Circuit.
 Argued June 22, 1993.
Decided Aug. 4, 1993.
 
 Gary G. Becker, New York City (Gerald B. Lefcourt, Sheryl E. Reich, Lefcourt & Dratel, on the brief), for witness-appellant.
 Ilene Jaroslaw, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Peter A. Norling, Asst. U.S. Atty., on the brief), for petitioner-appellee.
 Before: NEWMAN, Chief Judge, VAN GRAAFEILAND and ALTIMARI, Circuit Judges.
 JON O. NEWMAN, Chief Judge:
 
 
 1
 This appeal presents the issue whether a district court can compel a person to testify through a grant of use immunity where the testimony is requested by a foreign country, pursuant to a treaty, for use in a criminal prosecution in that country. Additionally, this appeal requires us to consider whether the treaty permits assertion of a foreign parent-child privilege and whether we will recognize a domestic parent-child privilege. These issues arise on an appeal by Mary Erato from the May 12, 1993, order of the District Court for the Eastern District of New York (Sterling Johnson, Jr., Judge) holding her in civil contempt for her refusal to testify, despite a compulsion order, regarding her son. We conclude that the District Court properly granted Erato immunity and rejected her assertions of foreign and domestic privilege but that an unresolved matter remains with respect to the authority of the foreign official who requested assistance. Though agreeing with Judge Johnson in the main aspects of his ruling, we are obliged to vacate the contempt order and remand for further proceedings.
 
 Background
 
 2
 Mary Erato ("Erato") is 80 years old and lives on Long Island. Pursuant to the Treaty on Mutual Assistance in Criminal Matters ("the Treaty"), June 12, 1981, U.S.-Neth., T.I.A.S. No. 10,734, the Netherlands requested assistance from the United States in obtaining her testimony. The requested testimony concerns Erato's 52-year-old son, John, who is under investigation for criminal fraud in the Netherlands Antilles. John allegedly embezzled millions of dollars in a fraudulent real estate scheme targeted against United States citizens. As part of this scheme, John allegedly transferred nine parcels of real estate, several companies, and a boat to his mother for $100,000, a fraction of the properties' value.
 
 
 3
 Upon receiving the Treaty request, Assistant United States Attorney Ilene Jaroslaw applied to District Judge Carol B. Amon who, on April 2, 1993, appointed Jaroslaw a Commissioner of the Court and authorized her to
 
 
 4
 take such steps as are necessary, including the issuance of Commissioner's subpoenas, to obtain the evidence requested by the Attorney General of the Netherlands Antilles in conformity with the request of March 30, 1993; [and] to adopt such procedures for the receipt of the evidence as are consistent with the use of the evidence within the Netherlands....
 
 
 5
 Jaroslaw subpoenaed Erato to appear on April 8, 1993, for the purpose of testifying. Erato appeared but refused to testify on various grounds, including her Fifth Amendment privilege against self-incrimination and the parent-child privilege recognized by Dutch law.
 
 
 6
 After a hearing before Judge Johnson, Jaroslaw obtained a letter from the Attorney General of the Netherlands Antilles, dated April 15, 1993, indicating that Mary Erato would not be prosecuted there. On April 20, 1993, Judge Johnson granted her use immunity pursuant to 18 U.S.C. Secs. 6002-6003 (1988). In view of the grant of immunity both in the United States and in the Netherlands Antilles, Judge Johnson ruled that Erato could no longer assert her Fifth Amendment privilege. He also ruled that the Treaty precluded the assertion in this proceeding of the Dutch parent-child privilege and that such a privilege was not available under federal law.
 
 
 7
 Subsequently, John Erato submitted a ruling by a Dutch Court that any testimony obtained from his mother would not be admissible against him because of the Dutch parent-child privilege, a ruling being appealed by the Netherlands Antilles. Erato again refused to testify on April 28, 1993. The parties appeared before Judge Johnson the following week, at which time he held Erato in contempt and ordered her to pay a fine of $25,000 per day for each day she failed to testify. Erato's fine has been stayed pending this appeal.
 
 Discussion
 I. The District Court's grant of immunity
 Section 6002 provides:
 
 8
 Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to ... a court or grand jury of the United States ... and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination....
 
 
 9
 18 U.S.C. Sec. 6002 (emphasis added).
 
 
 10
 Erato claims that the grant of immunity exceeds the District Court's statutory authority because her testimony was not sought for use in a "proceeding" in a United States court, but rather for use in a "proceeding" in the Netherlands Antilles. She argues that implicit in the phrase "testify or provide other information in a proceeding" is the idea that the testimony will have evidentiary value in a United States court. Thus, the requisite "proceeding" cannot be, as the Government argues, the hearing before Court-appointed Commissioner Jaroslaw at which Erato refused to testify.[1]
 
 
 11
 We are faced with a question of first impression: whether the immunity statute can be used to compel a person to testify where the testimony is sought for use only in a foreign criminal prosecution. As a matter of statutory construction, we reject Erato's assertion that section 6002 speaks to where the testimony is to be used. Instead, it describes only the location where the testimony is to be obtained. The taking of testimony by a court-appointed Commissioner is, at a minimum, "a proceeding ... ancillary to" the district court. The District Court ordered persons within its jurisdiction to provide testimony in accordance with the Treaty request, appointed Jaroslaw a Commissioner, and authorized her, among other things, to issue subpoenas to obtain the requested testimony and to seek further orders from the Court as necessary to execute the request. Thus, though the hearing to obtain Erato's testimony has no independent function beyond securing evidence for use by the Dutch authorities, it is nonetheless a "proceeding before or ancillary to" a United States court within the meaning of section 6002.
 
 
 12
 Moreover, the Treaty represents an agreement by the United States to assist the Netherlands in exchange for its assistance at other times. We believe that, by granting immunity in this and similar situations,[2] the United States can more readily assist the Netherlands in obtaining the requested information, and therefore, maintain good relations with its treaty partner. In addition, prior to applying for a grant of immunity, an official of the Justice Department determined that the grant would be in the public interest. See 18 U.S.C. Sec. 6003(b)(1). Thus, we conclude that the statutory language and our country's foreign policy goals support the District Court's grant of immunity to Erato.
 
 
 13
 II. The applicability of the Dutch parent-child privilege
 
 
 14
 Erato asserts three reasons why the District Court's refusal to apply the Dutch parent-child privilege to excuse her failure to testify was in error: (A) the Treaty permits the United States to honor the Dutch privilege and the United States has so chosen; (B) compelling her testimony violates section 1782 because the testimony is not sought for use in a Dutch judicial proceeding; and (C) the testimony is being compelled in a manner inconsistent with the April 2, 1993, order appointing the Commissioner.
 
 A. The Treaty
 
 15
 Two provisions of the Treaty are relevant to our consideration of Erato's first argument. Article 5 provides:
 
 
 16
 A person from whom evidence is sought shall, if necessary, be compelled by subpoena to appear and testify or produce documents, records and articles to the same extent as in investigations or proceedings in the Requested State. Testimonial privileges under the laws of the Requesting State shall not apply in the execution of requests under this Article.
 
 
 17
 (emphasis added). Article 12 provides:
 
 
 18
 Requests shall be executed according to the domestic law and procedures of the Requested State except to the extent that this Treaty provides otherwise.
 
 
 19
 (emphasis added). The "domestic," i.e., United States, law incorporated by Article 12 includes section 1782 which states:
 
 
 20
 The district court ... may order him to give his testimony or statement ... for use in a proceeding in a foreign or international tribunal....
 
 
 21
 A person may not be compelled to give his testimony or statement ... in violation of any legally applicable privilege.
 
 
 22
 28 U.S.C. Sec. 1782 (1988). The legislative history makes clear that the latter paragraph "provides for the recognition of all privileges to which the person may be entitled, including privileges recognized by foreign law." S.Rep. No. 1580, 88th Cong., 2d Sess. (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3790; see also In re Grand Jury Proceedings, Doe # 700, 817 F.2d 1108, 1112 (4th Cir.), cert. denied, 484 U.S. 890, 108 S.Ct. 212, 98 L.Ed.2d 176 (1987).
 
 
 23
 Erato contends that the purpose of the emphasized sentence in Article 5 was simply to leave to the Requested State the decision of which privileges to apply. The United States, her argument continues, has chosen via section 1782 to apply both its own and Dutch privileges; otherwise, our country would be forced to do the "dirty work" for other countries by compelling a person to testify here where she could not be compelled to testify if she were in the foreign county. Thus, she claims, she cannot be compelled to testify contrary to her asserted Dutch parent-child privilege. We disagree.
 
 
 24
 Article 5 clearly states that privileges of the Netherlands do not apply to requests under the Treaty. Article 12 incorporates this limitation by specifying that United States law is to be applied to Treaty requests "except to the extent that this Treaty provides otherwise." Thus, we agree with the District Court that section 1782's incorporation of both domestic and foreign privileges is narrowed by the Treaty. By excluding the application of the privileges of the Requesting State, the Treaty eliminates those privileges from the category of "legally applicable privilege[s]" under section 1782.
 
 
 25
 Our reading is consistent with the intent of the Treaty. In a letter to the Senate Foreign Relations Committee ("the State Department Letter"), the State Department explained the purpose of Article 5:
 
 
 26
 Paragraph 1 [of Article 5] prevents assistance from being barred by the assertion in the Requested State of claims of privilege under the laws of the Requesting State. This avoids the unnecessary litigation of questions of foreign law. The privilege may be asserted when the evidence is sought to be introduced in the Requesting State. In this way, questions of privilege will always be decided by the courts most competent to deal with them.
 
 
 27
 . . . . .
 
 
 28
 [The Treaty] is intended to amend and supplement existing law in matters such as ... eliminating the problem of litigating foreign privileges in U.S. courts....
 
 
 29
 S.Rep. No. 36, 97th Cong., 1st Sess. 7, 11-12 (1981) (hereafter "Senate Report"). Thus, the purpose of Article 5 was not, as Erato asserts, to leave the decision of whether or not to apply the Requesting State's privileges to the Requested State; it was to leave for the Netherlands the interpretation of its own law of privileges and to relieve our courts of burdensome inquiries into such law.
 
 B. Section 1782
 
 30
 Erato's second contention is that the original order compelling her to testify is invalid because it violates section 1782. First, she claims that section 1782 does not permit the compulsion of testimony because the proceeding in the Netherlands is investigative at this stage, rather than judicial. See Fonseca v. Blumenthal, 620 F.2d 322, 323-24 (2d Cir.1980); In re Letters Rogatory Issued by Director of Inspection of Government of India, 385 F.2d 1017, 1020-21 (2d Cir.1967). Second, she claims that, even if the Dutch proceeding were judicial, the evidence sought is not "for use in a proceeding" because the evidence cannot be "used" in the Netherlands based on her assertion of the Dutch parent-child privilege.
 
 
 31
 While we doubt the force of Erato's arguments under section 1782, see In re International Judicial Assistance (Letter Rogatory) for the Federative Republic of Brazil, 936 F.2d 702, 706 (2d Cir.1991) (holding that section 1782 permits judicial assistance even where adjudicative proceedings are not pending as long as they are imminent), existing law under section 1782 does not control this case. The July 17, 1981, Letter of Submittal to the President and the State Department Letter, see Senate Report at 11-12, indicate that the Treaty is self-executing and that, although Treaty requests will largely be executed under existing authority, the Treaty will amend and supplement preexisting law in several respects.
 
 
 32
 We are bound to give effect to the Treaty because it is self-executing. See 1 Restatement (Third) of the Foreign Relations Law of the United States Sec. 111(3) & cmt. h (1987). In addition, to the extent that the Treaty is inconsistent with a preexisting statutory provision, the Treaty supersedes that provision. See id. Sec. 115(2) & cmt. c. Article 1 of the Treaty contemplates mutual assistance in criminal investigations, regardless of whether any charges have been filed, see also Senate Report at 6, 11, and the Treaty leaves the application of privileges to the Requesting State. Thus, in executing a request under the Treaty, a court need not determine whether a foreign judicial proceeding is pending or whether the requested evidence can be used in that proceeding.
 
 C. The April 2 order
 
 33
 Erato also argues that the requirement in Judge Amon's April 2, 1993, order that the Commissioner "adopt such procedures for the receipt of the evidence as are consistent with the use of the evidence within the Netherlands" has been violated because the Netherlands would not require her to testify against her son. We agree with the Government that this language does not refer to the application of testimonial privileges, but instead directs the Commissioner to accommodate the Dutch authorities by adopting certain procedures necessary for the receipt of evidence abroad, such as providing a court reporter to preserve a record and a sworn certificate attesting to the accuracy of the materials remitted. By complying with these procedural requirements, the Commissioner ensures that the testimony can be admitted, so long as a Dutch court, performing the role allocated to it by the Treaty, concludes that its admissibility is not barred by the application of the Dutch parent-child privilege.
 
 
 34
 III. The applicability of a domestic parent-child privilege
 
 
 35
 In addition to the Dutch parent-child privilege, Erato also claims a domestic parent-child privilege as a basis for her refusal to testify against her son. She relies primarily on In re Agosto, 553 F.Supp. 1298 (D.Nev.1983) and In re Grand Jury Proceedings (Greenberg), 11 Fed.R.Evid.Serv. 579 (D.Conn.1982).
 
 
 36
 Fed.R.Evid. 501 provides that "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." In In re Matthews, 714 F.2d 223 (2d Cir.1983), we ruled that a parent-child privilege did not exist for a witness who refused to testify against his in-laws. Id. at 225. Although we intimated no views concerning Agosto or Greenberg, we noted that they were departures from the traditional rule in federal court that there is no privilege, other than the spousal privilege, permitting a person not to testify against family members. Id. at 224 (citing United States v. Jones, 683 F.2d 817, 818-19 (4th Cir.1982); In re Grand Jury Proceedings (Starr), 647 F.2d 511, 512-13 & n. 4 (5th Cir.Unit A May 1981); and United States v. Penn, 647 F.2d 876, 885 (9th Cir.) (in banc), cert. denied, 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980)); see also In re Grand Jury Proceedings of John Doe, 842 F.2d 244, 246-48 (10th Cir.), cert. denied, 488 U.S. 894, 109 S.Ct. 233, 102 L.Ed.2d 223 (1988); United States v. Davies, 768 F.2d 893, 897-900 (7th Cir.), cert. denied, 474 U.S. 1008, 106 S.Ct. 533, 88 L.Ed.2d 464 (1985); Port v. Heard, 764 F.2d 423, 428-30 (5th Cir.1985) (Constitution does not preclude compelled incrimination of child); United States v. Ismail, 756 F.2d 1253, 1257-58 (6th Cir.1985); In re Grand Jury Subpoena of Santarelli, 740 F.2d 816, 817 (11th Cir.1984).
 
 
 37
 Although Matthews is not controlling because Erato is being compelled to testify against a blood-relative, her case presents a weaker claim for recognition of a parent-child privilege than might be presented in a case involving a minor child. At least in that situation the argument would be available that compelling a parent to inculpate a minor child risks a strain on the family relationship that might impair the mother's ability to provide parental guidance during the child's formative years. However we might rule in that context, we decline to recognize a parent-child privilege under the present circumstances. We see no basis for recognizing in federal law a new privilege that would permit a mother to assert a parent-child privilege to avoid testifying against her adult son regarding transactions in which she appears to have benefited from her son's allegedly criminal activity by receiving allegedly stolen assets at a below market value price.
 
 IV. The authority of the requesting official
 
 38
 Article 14 of the Treaty requires that a request for assistance be made by a "Competent Authority." For the Netherlands, Article 14 defines "Competent Authority" as "the Minister of Justice in the Netherlands or the Minister of Justice in the Netherlands Antilles or their designees." The letter seeking assistance was signed by Examining Magistrate F.A. Hartsuiker and Chief Public Prosecutor D.A. Piar. At oral argument, the Government assured us that it possesses documents, not in the record, indicating that these persons had authority to make requests as designees of the Minister of Justice. Because Erato cannot be compelled to testify under an unauthorized request and because the issue of authority for the request has not yet been resolved on a complete record, we must remand to the District Court. On remand, the Government may introduce its evidence as to the authority of the requesting officials, and the District Court will then be able to resolve any dispute that may exist on this issue.
 
 Conclusion
 
 39
 Though we agree with most of the District Court's opinion, we conclude that the unresolved issue of the Dutch officials' authority requires further inquiry. We therefore vacate the contempt order and remand to the District Court for further proceedings consistent with this opinion.
 
 
 
 [1]
 Identification of the "proceeding" is also relevant to the determination of the contempt sanction. The lesser of eighteen months or the life of the "proceeding" establishes the maximum period for which a witness in contempt may be incarcerated. See 28 U.S.C. Sec. 1826(a)(1) (1988)
 
 
 [2]
 Because the Netherlands Antilles has also granted Erato immunity, we need not decide whether section 6002 requires such a grant prior to the issuance of an order compelling testimony from a person who fears foreign prosecution. The answer to this question is related to, but not necessarily controlled by, the answer to the question whether the Fifth Amendment protection extends to fear of a foreign prosecution. This question is open in our Circuit. See In re Grand Jury Proceedings, 748 F.2d 100, 105 (2d Cir.1984). Circuits that have decided the question have concluded that the privilege does not apply to a fear of foreign prosecution. See United States v. (Under Seal), 794 F.2d 920, 925-28 (4th Cir.), cert. denied, 479 U.S. 924, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986); In re Parker, 411 F.2d 1067, 1070 (10th Cir.1969), vacated as moot, 397 U.S. 96, 90 S.Ct. 819, 25 L.Ed.2d 81 (1970)