**In re LETTER OF REQUEST FROM the BORAS DISTRICT COURT, SWEDEN, In the Matter of Edward Nevins.**

**Misc. No. MC–93–055 (MDG).**

United States District Court,
E.D. New York.

Feb. 4, 1994.

---

Millicent Y. Clarke, Asst. U.S. Atty., E.D. New York, Brooklyn, NY.

Balram Kakkar, Winthrop, Stimson, Putnam & Roberts, New York City.

## MEMORANDUM AND ORDER

GO, United States Magistrate Judge:

Before me [1] is a request for an order pursuant to 28 U.S.C. § 1782 to execute a letter rogatory issued by the District Court of Boras, Sweden on June 12, 1992 to the United States Department of Justice (the "Letter Rogatory") under the Convention of Taking Evidence in Civil or Commercial Matters dated March 18, 1970 and entered into force October 7, 1972, TIAS 7444, 23 UST 2555 (the "Hague Convention"). The Boras District Court requested judicial assistance in obtaining a blood sample from Edward Nevins (the "respondent") in connection with a paternity action pending in that court.

For the following reasons, the request for judicial assistance is granted.

## BACKGROUND

The United States of America ("the petitioner") moved on behalf of the Boras District Court by order to show cause on April 1, 1993 for an order requiring respondent to comply with the Letter Rogatory. Respondent had previously refused to comply with a request voluntarily to provide a blood sample for the purposes stated in the Letter Rogatory. In support of its motion, petitioner submitted a memorandum of law and declaration of Millicent Y. Clarke, Assistant United States Attorney dated April 1, 1993, to which a copy of the Letter Rogatory was attached. The Letter Rogatory states that there is a

---

1. This case was reassigned to me for all purposes on August 31, 1993 pursuant to an order issued by the Honorable Edward R. Korman in accordance with Rule 6 of the Rules for Proceedings before Magistrate Judges in the Southern and Eastern Districts.

case pending to determine the paternity of a Timothy Von Schedvin, who resides in Boras with his mother, Christina von Schedvin. Because respondent has denied paternity, the Boras District Court ordered that a blood sample be obtained from him. By letter dated October 1, 1993, Assistant U.S. Attorney Clarke submitted "a seven-page document in English which purports to be a translation of the Summons Application, the Report of Investigation and a Writ of Summons issued against Edward [Nevins] in this action. These documents were forwarded to the United States Department of Justice by Judge Claes Theorin of the Boras District Court, Sweden."

## DISCUSSION

The procedures to be utilized in a request for judicial assistance from a foreign tribunal are set forth in 28 U.S.C. § 1782, which provides in pertinent part:

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

When Congress amended section 1782 in 1964, it intended to modify procedures to facilitate the rendering of judicial assistance. As the Senate Judiciary Committee explained in its report:

Enactment of the bill into law will constitute a major step in bringing the United States to the forefront of nations adjusting their procedures to those of sister nations and thereby providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.

It is hoped that the initiative taken by the United States in improving its procedures will invite foreign countries similarly to adjust their procedures.

S.Rep. No. 1580, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3783.

Consistent with this legislative intent, the Second Circuit has interpreted section 1782 expansively in two recent rulings. In *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir.), *cert. denied sub nom. United Technologies Int'l v. Malev Hungarian Airlines*, — U.S. —, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992), the Second Circuit reversed the decision of the district court, which had denied discovery to a litigant before a Hungarian court on the grounds that the litigant had never made any discovery request to the Hungarian court. Refusing to read a "quasi-exhaustion doctrine" into section 1782, *id.* at 100, the Second Circuit determined that the plain language of the statute entitled a litigant to discovery in aid of its case in a foreign court. *Id.* at 101. The court characterized the 1964 amendments as having "the twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 100. The Second Circuit concluded that district courts should not add conditions to Section 1782 not found in its text, but, instead, should liberally favor assistance to foreign courts.

In *Application of Aldunate*, 3 F.3d 54 (2d Cir.1993), the Second Circuit rejected the requirement imposed by other circuits that the material requested be discoverable in the foreign court. Examining the language of

the statute and relying upon *Malev*, the court held:

> Given that the statutory language is silent and the legislative history indicates that "[i]n exercising its discretionary power, the court *may* take into account the nature and attitudes of the government of the country from which the request emanates and the character of the proceedings in that country," Senate Report at 3788 (emphasis added), we find it difficult to believe that Congress actually intended section 1782 to have an implicit requirement that any evidence sought in the United States be discoverable under the laws of the foreign country.

3 F.3d at 59.

■ Respondent argues that the petition must be denied because petitioner has not submitted an affidavit of Christina Von Schedvin stating that she had sexual intercourse with respondent during the period of conception. He contends this *prima facie* showing of paternity is required under New York State law, *Commissioner of Social Services on behalf of Smith v. O'Neil*, 94 A.D.2d 480, 464 N.Y.S.2d 889 (4th Dep't.1983), and must be met before the blood test sought here may be ordered. However, nothing supports respondent's assumption that the requesting party must meet such an evidentiary requirement under the local law of the executing jurisdiction. Since *Aldunate* stands for the proposition that this court need not determine whether the evidence would be admissible in the foreign court, it follows that this court should not look to see whether a *prima facie* case under New York law has been established in the foreign court in the absence of an express statutory requirement. The fact that the Boras District Court found sufficient grounds to 'order the blood test should end this court's inquiry in this regard. To insist on compliance with New York law would improperly read additional conditions to discovery not found in section 1782. *See Malev* and *Aldunate, supra.*

■ Only one published case pertains to a request for a blood sample pursuant to 28 U.S.C. § 1782. In *In Re Letter of Request from the Local Court of Pforzheim*, 130 F.R.D. 363 (W.D.Mich.1989), the court, in compelling a blood test for use in a foreign paternity action, looked to state law only in support of its observation that "the requirement of providing a blood sample in a paternity action is a routine one." *Id.* at 366.

Not only is there no express requirement in section 1782 that a *prima facie* showing of paternity be made, but also, all conditions applicable to blood tests set forth in the section have been met. First, the section requires that the evidence must be provided only in accordance with the Federal Rules for Civil Procedure. Fed.R.Civ.P. 35 [2] permits a physical examination, including a blood test, upon a showing of good cause. In the instant matter, good cause is shown since the blood test is relevant to the issue of paternity. *See Lee Wing Get v. Dulles*, 18 F.R.D. 415 (E.D.N.Y.1955).

In addition, section 1782 specifies that "[a] person may not be compelled to give his testimony or statement ... in violation of any legally applicable privilege." This provision is intended to provide "for the recognition of all privileges to which the person may be entitled, including privileges recognized by foreign law." S.Rep. No. 1580, 88th Cong., 2d Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3790, *quoted in In re Erato*, 2 F.3d 11, 14 (Cir.1993). The only privileges or rights respondent could arguably invoke would be the privilege against self-incrimination and the right to be free from unreasonable searches and seizure guaranteed under federal and state law. Yet courts have long recognized that providing a blood sample would not violate these rights. *See Commissioner of Social Services on behalf of Laura N. v. Stephen H.*, 94 A.D.2d 936, 464 N.Y.S.2d 66, 67 (4th Dep't.1983)

---

**2.** This rule provides, in pertinent part:

    (a) **Order for Examination.** When the mental or physical condition (including the blood group) of a party ... is in controversy, the court ... may order the party to submit to a physical or mental examination by a suitably licenses or certified examiner ... The order may be made only on motion for good cause shown

(citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)).

The Hague Convention, which governs letters rogatory, essentially imposes the same conditions as those in section 1782 discussed above. Article 9 provides, in relevant part: "The judicial authority which executes a Letter of Request shall apply its own law as to the *methods and procedures* to be followed." Article 10 requires that the requested authority "apply the appropriate *measures of compulsion* in the instances and to the same extent as are provided by its internal law for the execution of orders issued by the authorities of its own country or of requests made by parties in internal proceedings." (emphasis supplied.) The language in these articles of the Convention refers to the internal *procedural* law of the requested authority, not to its substantive law. The only article that permits the person concerned to refuse to give evidence is Article 11, which provides that such a person may do so "in so far as he has a privilege or duty" under the law of either the State of execution or the state of origin. Thus requirements of the Convention have also been met.

■ Petitioner's compliance with the terms of section 1782 and the Hague Convention does not necessarily end this inquiry since this court must determine whether it is appropriate to exercise the wide discretion conferred by section 1782. *Aldunate*, 3 F.3d at 59.

■ After reviewing the documents from the Boras District Court which the U.S. Attorney's Office forwarded to this court on October 1, 1993, I find that ordering respondent to submit to the blood test would be consonant with the purposes of section 1782. In a Report of Investigation of the Boras Social Welfare Committee dated May 7, 1987 and signed by Christina von Schedvin confirming the information submitted by her, Ms. von Schedvin identifies respondent as the father of Timothy. The report also states that the matter was referred to legal proceedings because respondent denied paternity. A report dated February 16, 1989 by an officer of the Swedish Consulate–General in New York describes efforts to contact respondent and the resulting interview with

respondent in which he acknowledged his acquaintance with Ms. von Schedvin but again denied paternity.

Later, Stefan Riso, an attorney with the Boras Public Law Office, made an application for a summons dated June 19, 1991 in which he states that "[d]uring the conception period Christina von Schedvin had sexual intercourse with Edvard [sic] Nevins only." The application also requests blood tests for Timothy, his mother and respondent. A writ of summons was issued on July 4, 1991 to respondent at his address within the jurisdiction of this Court.

These documents show that the request for judicial assistance was made only after an investigation of the claim that respondent fathered Timothy von Schedvin. Moreover, the blood test requested appears to be a standard procedure used by the Boras District Court in paternity cases. Thus, given the purposes of section 1782, I find no reason to refuse the requested order.

■ Respondent's only other argument is a technical objection regarding improper authentication. Respondent maintains that the documents from the Boras District Court are not admissible because they have not been properly authenticated in accordance with Fed.R.Civ.P. 44(a)(2) and Fed.R.Evid. 902(3). While I agree that the preferable procedure would have been for petitioner to submit either properly authenticated documents or, at the very least, an affidavit by the Assistant United States Attorney attesting to the authenticity of the documents she has received from the Boras District Court, I find that failure to do so does not justify delaying the requested relief.

Subsection (b) of 28 U.S.C. § 1781 permits letters rogatory to be delivered directly from a foreign court to the agency in the United States to which it is addressed, rather than through the Department of State as set forth in subsection (a). Subsection (b) clearly contemplates the bypassing of formal diplomatic channels in the transmittal of letters rogatory that would necessarily be utilized in order to meet the attestation and certification requirements of Fed.R.Civ.P. 44(a)(2) or Fed. R.Evid. 902(3). Neither section 1781 nor

section 1782 requires such authentication. Insistence on authentication with respect to the documents from the Boras District Court would be contrary to the intent of subsection (b) to facilitate execution of letters rogatory, particularly since I reviewed them for the limited purposes discussed above.

Moreover, not only has respondent had ample opportunity to investigate the authenticity and accuracy of the documents,[3] he probably received copies of all these documents after the writ of summons issued against him on July 4, 1991. Yet he does not deny that he had been contacted by the Swedish authorities as set forth in the reports or that he received the summons and attached documents. Delaying these proceedings to await proper authentication would serve no purpose at this point other than to insure compliance with an unnecessary condition.

### CONCLUSION

It is ordered that respondent Edward Nevins appear at the Veteran's Administration Extended Care Facility, 179th Street and Linden Blvd, St. Albans, New York 11425 at a date and time to be specified by Assistant U.S. Attorney Millicent Y. Clarke to have a blood sample taken from him as requested by the Boras District Court, Sweden.

SO ORDERED.

---

**3.** I find there is "evidence sufficient to support a finding that [these documents are] what [their] proponent claims." Fed.R.Evid. 901(a). Furthermore, Fed.R.Evid. 902(3) provides in pertinent part:

> If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without certification. Fed.R.Civ.P. 44(a)(2) has a comparable provision.