**In re LETTERS ROGATORY, FROM THE LOCAL COURT (Amtsgericht) of Plon, Germany—93 E 64/97**

No. 98–X–72908–DT.

United States District Court, E.D. Michigan, Southern Division.

Oct. 27, 1998.

---

cause why Mark Devine should not be compelled to produce a blood sample to establish paternity and the respondent's objections to the order to show cause. On July 9, 1998, the United States Attorney filed a motion with this Court requesting the Court to order respondent Mark Devine to show cause why he should not be compelled to produce a blood sample to establish paternity pursuant to a letter rogatory from the Local Court (Amtsgericht) of Plon, Germany. On July 10, 1998 this Court issued an order to show cause and held a hearing on the matter on August 25, 1998. At that hearing, the Court entertained oral argument from counsel and ordered respondent to file any objections to the request for a blood sample with the Court.[1] On September 10, 1998, respondent filed objections to the "relief sought via letters rogatory from the local court (Amtsgericht) of Plon, Germany." For the reasons that follow, this Court orders respondent Mark Levine to submit to a blood test to establish paternity pursuant to the letter rogatory issued by the Local Court of Plon, Germany.

### Background

According to respondent, he and Bettine Poffel, a resident of Germany, had a child together outside of marriage. The minor child, Thomas Poffel, was born in Germany on January 13, 1994. Prior to the birth of the child, Ms. Poffel returned to Germany where she and the child presently reside. Respondent alleges that he informed Ms. Poffel on numerous occasions of his desire to participate in the upbringing of the child and of his intent to seek custody. Ms. Poffel, allegedly, refuses both of respondent's requests. Further, respondent "acknowledges"[2] that he is the father of Ms. Poffel's

Karen Gibbs, A.U.S.A., Detroit, MI, for plaintiff.

Mitchell R. Dittman, Troy, MI, for defendant.

### OPINION AND ORDER COMPELLING RESPONDENT MARK DEVINE TO SUBMIT TO A BLOOD TEST TO ESTABLISH PATERNITY

DUGGAN, District Judge.

#### Opinion

This matter is currently before the Court on this Court's issuance of an order to show

---

1. The Court adjourned the August 25, 1998 hearing until October 13, 1998 in order to provide respondent adequate time to file his objections to the order to show cause. However, respondent's ability to file objections was conditioned upon his payment to the U.S. Attorney of a $300.00 sanction imposed because of respondent's failure to present to the Court his objections at the previously scheduled hearing date. As respondent has tendered the $300.00 in sanctions to the government, the Court will now consider his objections.

2. Respondent asserts that "[w]ithin the present matter Mr. Devine does acknowledge paternity and has filed a paternity action here in Michigan seeking an Order of Filiation as well as Orders of Visitation and possible custody." (Res.Obj. at 3). The Court notes that MICH.COMP.LAWS § 722.727(1)(a) provides:

 The court shall enter an order of filiation declaring paternity and providing for the support of the child under 1 or more of the following circumstances:

minor child. The German government issued a letter rogatory requesting assistance in obtaining a blood sample from respondent to establish paternity of the minor child, Thomas Poffel.

### Analysis

Respondent objects to the taking of a blood sample on the grounds that Michigan law does not require a blood sample to establish paternity where the father voluntarily acknowledges paternity. Respondent submits that he acknowledges paternity and has filed an action in Michigan seeking an Order of Filiation as well as an Order of Visitation. (Res.Obj. at 3). Specifically, respondent alleges "there is Michigan law directly on point and that Michigan law should be applied in denying the relief sought vis-a-vis 'letters rogatory' and excusing Mr. Devine from any compulsion to submit to blood testing." (Res.Obj. at 5). As authority for his proposition, respondent relies upon Article 11 of the Hague Convention which states:

In the execution of a letter of request, the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give evidence—

(a) under the law of the State of Execution....

In contrast, the government contends the proper role for this Court is to enforce the request contained in the letter rogatory without regard to respondent's substantive rights under Michigan law relative to the paternity issue. The government relies on Article 12 of the Convention which states:

The execution of a Letter of Request may be refused only to the extent that—

(a) in the State of execution, the execution of the Letter does not fall within the functions of the judiciary; or

(b) the State addressed considers that its sovereignty or security would be prejudiced thereby.

Execution may not be refused solely on the ground that under its internal law the State of execution claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not admit a right of action on it.

According to the government, the language of Article 12 is unambiguous in its import. Unless the execution of the letter does not fall within the function of judiciary or the sovereignty of a state is threatened, the request to execute the letter mandates compliance. The government argues that respondent cannot articulate the existence of either of the foregoing exceptions; accordingly, the government believes that defendant should be compelled to provide the blood sample.

■ The procedures governing a request for judicial assistance from a foreign tribunal are set forth in 28 U.S.C. § 1782 which states:

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.... The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be

(b) The defendant acknowledges paternity either orally to the court or by filing with the court a written acknowledgment of paternity. In support of his contention that he has "acknowledged" paternity, respondent attaches at exhibit 3 to his objections, a copy of an unsigned and unfiled complaint requesting the Order of Filiation. The Court notes that an unsigned and unfiled complaint is of no significance to the Court when the statute mandates either an oral

acknowledgment to the court, or the filing of a written acknowledgment. However, the Court also notes that a petition for paternity and custody of minor child, Thomas Poffel was filed in the Circuit Court for the County of St. Clair, Case No. 98–0029337–BC, on September 9, 1998, one day prior to respondent's filing of the instant action and the date on which respondent's reply in this action was due.

taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

The intent of Congress in enacting § 1782 was to "strengthen the power of the district courts to respond to requests for international assistance." *In Re Letter Rogatory from Local Court,* 154 F.R.D. 196, 199 (N.D.Ill. 1994) (citing *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan,* 539 F.2d 1216, 1218 (9th Cir.1976)). A necessary concomitant to the statute's enactment was the desire to foster reciprocity. *Id.* (citing *John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132, 135 (3rd Cir.1985)).

 Provisions governing the taking of evidence in accordance with § 1782 are set forth in the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters 23 U.S.T. 2555, TIAS 7444, commonly referred to as the "Hague Convention." Respondent relies on portions of the Hague Convention in support of his contention that he may refuse to submit to the blood sample because Michigan law appears to be in conflict with German law on this point. Article 11 of the Hague Convention states:

> In the execution of a Letter of Request the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence—
>
> (a) under the law of the State of execution; or
>
> (b) under the law of the State of origin, and the privilege or duty has been specified in the Letter, or at the instance of the requested authority, has been otherwise confirmed to that authority by the requesting authority.

Respondent appears to advance the argument that as Michigan law may not compel a blood test where the father acknowledges paternity, see MICH.COMP.LAWS § 722.714(2), such distinction is tantamount to the conferral of a "privilege or duty" upon respondent to refuse to give the evidence.

As an initial matter, the government contends and the Court agrees, that the salient distinction is "[t]he fact that Michigan courts would not *require* a putative father to produce blood samples, once he acknowledges paternity, does not prove that such test be *precluded.*" (Gov't Resp. at 2) (emphasis in original). Respondent's argument that Michigan laws governing the establishment of paternity conflict with German laws on the subject is predicated on the assumption that Michigan laws do not require a blood test in the face of an acknowledgment of paternity by the putative father. However, the fact that the laws don't require a blood test is not the equivalent of stating that Michigan laws prohibit a blood sample to establish paternity where a father has acknowledged paternity. The statute at issue, MICH.COMP.LAWS § 722.714(2), states "An action is not required to be brought under this act if the child's father acknowledges paternity under the acknowledgment of parentage act, or if the child's paternity is established under the law of another state." The statute does not contain any express language prohibiting on the taking of a blood test even where a putative father has acknowledged paternity. Therefore, to the extent that Michigan law does not prohibit a blood sample, the Court does not believe that it is in conflict with the law of Germany.

In addition, the Court does not believe respondent's reliance on Article 11 of the Convention to support his argument with respect to Michigan's laws on the taking of blood samples is appropriate for the following reason. The United States District Court for the Eastern District of New York, in confronting a challenge by an individual seeking to avoid compulsion of a paternity test, rejected that individual's reliance upon Article 11 of the Hague Convention as providing a basis upon which the respondent could refuse to submit to the test. Addressing the nature of the "privilege or right" contemplated by Article 11, the Court stated

> The only privileges or rights respondent could arguably invoke would be the privilege against self-incrimination and the right to be free from unreasonable searches and seizure guaranteed under federal and state law. Yet courts have long recognized that providing a blood sample would not violate these rights.

*In Re Letter of Request from the Boras District Court, Sweden,* 153 F.R.D. 31, 34–35 (E.D.N.Y.1994); (*accord In Re Letter Rogatory from Local Court,* 154 F.R.D. 196 (N.D.Ill.1994)).

In the case *sub judice,* respondent does not invoke his Fifth Amendment right against self-incrimination nor does he assert that the blood test is an unreasonable search and seizure in violation of any rights under the Fourth Amendment. Instead, respondent intimates that his refusal to submit to a blood test is sanctioned by Michigan law which he asserts is dispositive. However, the Court believes that unless respondent makes a showing that the submission to a blood test to establish paternity somehow violates his Fourth or Fifth Amendment rights, the Court must enforce the request set forth in the letter rogatory. *See In Re Letter of Request, supra,* 153 F.R.D. at 35 ("The only article [of the Hague Convention] that permits the person concerned to refuse to give evidence is Article 11, which provides that such a person may do so 'in so far as he has a privilege or duty' under the law of either the State of execution or the state of origin.") Respondent has not cited, nor asserted that he is relying upon, any privilege provided by the state of execution, i.e. the United States, or the law of the state or origin, i.e. the German Federal Republic. Therefore, respondent has failed to articulate the existence of any "privilege or duty" which would excuse his compliance with the request contained in the letter rogatory from the German government.

Moreover, the Court does not believe that respondent has provided the Court with any support for his argument that where the law of the state of Michigan is in conflict with the German law, the Court is bound to follow Michigan law. Respondent cites the Court to several decisions of Michigan state courts on paternity actions; however, none of these cases are germane to the resolution of the applicability of Michigan law to the execution of the request of the letter rogatory. In addition, respondent makes no tenable argument in response to the government's reliance upon Article 12 of the Hague Convention which requires this Court's assistance in the execution of a letter rogatory in the absence of the applicability of one of the enumerated exceptions. In sum, the Court concludes that it is appropriate to execute the request contained in the letter rogatory and require respondent to submit to a blood test for the purposes of ascertaining the paternity of the minor child, Thomas Poffel.

### Conclusion

For all of the reasons set forth above,

**IT IS ORDERED** that Mark Devine submit a blood sample on or before November 30, 1998 at a time, date and place to be set by the U.S. Attorney's Office.