The **REPUBLIC OF PARAGUAY, et al., Plaintiffs,**

v.

George **ALLEN, Governor of Virginia, et al., Defendants.**

**Civil Action No. 3:96CV745.**

United States District Court, E.D. Virginia, Richmond Division.

Nov. 27, 1996.

Loren Kieve, Debevoise & Plimpton, Washington, DC, for plaintiffs.

Donald Richard Curry, Office of the Attorney General, Richmond, VA, for defendants Allen, Gilmore, Angelone, Garraghty, Netherland, Sheridan, Kendrick, Newman, Winston and Trodden.

Ara Loris Tramblian, Arlington, VA, for defendant Stover.

### MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to FED.R.CIV. PROC. 12(b)(1). In the alternative, the defendants ask the Court to dismiss the action for failure to state a claim pursuant to FED. R.CIV.PROC. 12(b)(6). For the reasons set forth below, the Court GRANTS the motion to dismiss for lack of subject matter jurisdiction.

### I. BACKGROUND

This case arises from the arrest and conviction of Angel Breard. Mr. Breard is a dual citizen of Paraguay and Argentina. He came to the United States on a student visa in 1986. He has remained in this country since then. In 1993, a jury found Mr. Breard guilty of the rape and stabbing death of thirty-nine year old Ruth Dickie. The trial court sentenced him to death for these crimes. On August 30, 1996, Mr. Breard filed a petition for a writ of habeas corpus in this Court.

On September 12, 1996, the Republic of Paraguay, Jorge J. Prieto, Ambassador of the Republic of Paraguay to the United States and Jose Dos Santos, Consul General of the Republic of Paraguay to the United States filed this action. Plaintiffs seek redress for alleged treaty violations stemming from Mr. Breard's arrest.

In 1970, the United States and the Republic of Paraguay entered into the Vienna Convention on Consular Relations, April 24 1963, 21 U.S.T. 77, 596 U.N.T.S. 261 (the "Vienna Convention"). Article 36(1) states that if an arrested foreign citizen so requests:

(b) the competent authorities of the receiving state shall, without delay, inform the consular post of the sending state if, within its consular district, a national of that state is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;

(c) consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.

Paraguay and its officials argue that defendants, various officials representing the state of Virginia, failed to comply with this provision.

Plaintiffs also insist that the Treaty of Friendship, Commerce, and Navigation, Feb. 4, 1859, U.S.–Para., 12 Stat. 1091 (the "Friendship Treaty") grants similar privileges. The United States and Paraguay entered into this treaty on February 4, 1859. It is still in effect. Although the Friendship Treaty does not contain a notice provision similar to that in the Vienna Convention, it does contain a "most favored nation clause." Under Article XII of the Treaty, "the Diplomatic Agents and Consuls of the Republic of

Paraguay in the United States of America shall enjoy whatever privileges, exemptions and immunities are, or may be, there granted to Agents of any other Nation whatever." Based on this clause, Plaintiffs contend that they are entitled to immediate and mandatory notification of the arrest of any Paraguayan national. The United States has extended this privilege to other nations in bilateral agreements. *See, e.g.,* Convention Regarding Consular Officers, June 6, 1951, U.S.–U.K., art. 16, 3 U.S.T. 3426; Consular Convention, June 1, 1964, U.S.–U.S.S.R., art. 12(2) & sec. 1 of protocol, 19 U.S.T. 5018; Agreement on Consular Relations, Jan. 31, 1979, U.S.–China, sec. 5, 30 U.S.T. 17.

In addition, Mr. Dos Santos argues that defendants' inaction gives rise to a claim under 42 U.S.C. § 1983. Mr. Dos Santos is the Consul General of the Republic of Paraguay to the United States. In his official capacity, he has jurisdiction over the consular district encompassing the Commonwealth of Virginia.

Plaintiffs request several forms of declaratory and injunctive relief. In particular, they ask that this Court:

1. Declare that defendants violated the Vienna Convention and Friendship Treaty by failing to notify plaintiffs of Breard's arrest.

2. Declare that defendants continue to violate both treaties by failing to afford plaintiffs a meaningful opportunity to give Breard assistance during the proceedings against him.

3. Declare Breard's conviction void.

4. Enjoin defendants from taking any action based on the conviction and declare that any further action based on the conviction is a continuing violation of the treaties.

5. Grant an injunction vacating Breard's conviction and directing defendants to abide by the treaties during any future proceedings against Breard.

Defendants have filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. Defendants' arguments fall into two general categories: (1) that this Court does not have subject matter jurisdiction over the claims presented and (2) that the plaintiffs' claims are otherwise non-justiciable.

## II. SUBJECT MATTER JURISDICTION

### A. Eleventh Amendment Immunity

■ The Eleventh Amendment places constitutional limits on federal court subject matter jurisdiction. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The text of the amendment divests this Court of jurisdiction over actions against a state by "Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. CONST. Amend XI. This language was soon interpreted to prohibit other actions against a state in federal court. *See, e.g., Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) (Eleventh Amendment bars suits against a state by one of its citizens); *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 781, 111 S.Ct. 2578, 2582, 115 L.Ed.2d 686 (1991) (Eleventh Amendment bars suits against a state by an Indian Tribe). In particular, the Eleventh Amendment bars suits by a foreign government against a state government in federal court. *Seminole Tribe of Florida v. Florida,* — U.S. ——, ——–——, 116 S.Ct. 1114, 1136–37, 134 L.Ed.2d 252, 283 (1996); *Principality of Monaco v. Mississippi,* 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934).

■ The Eleventh Amendment also bars suits against state officials that are in fact suits against a state. *Pennhurst,* 465 U.S. at 101–02, 104 S.Ct. at 908–09. However, there is a narrowly crafted exception to this rule. A party at risk of or suffering from a violation of federally protected rights may seek to enjoin the offending state officers. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Before issuing an *Ex parte Young* type injunction, the plaintiffs must satisfy two criteria: (1) they must show that they seek a remedy for a continuing violation of federal law and (2) they must show that the relief is prospective. *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1986).

Much of the debate over the doctrine of *Ex parte Young* has involved the second criterion. *See, e.g., Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (allowing award of attorney's fees as ancillary to the grant of prospective relief); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (discussing the distinction between retroactive and prospective relief). Here, however, the Court must determine if Paraguay is the victim of a continuing violation of federal law. The Supreme Court has considered this issue on at least two occasions. *See, e.g., Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). In *Papasan,* the Court distinguished those cases properly reviewable under the doctrine of *Ex parte Young* from those that "stretch that case too far." "Young has been focused on cases in which a violation of federal law by a state is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Id.* at 277–78, 106 S.Ct. at 2940. For example, in *Milliken,* the defendants were perpetuating a system of *de jure* segregation. They were in violation of federal law at the precise moment when the case was filed.

■ That is not the case here. The complaint does not state that defendants continue to deny plaintiffs access to Breard. There is no allegation that defendants refuse to allow plaintiffs to give Mr. Breard legal assistance. In fact, officials from the Republic of Paraguay assisted in the preparation of Breard's habeas petition filed before this Court. Now that defendants have given Paraguayan officials access to Mr. Breard, they are no longer in violation of the treaties.

Plaintiffs urge that but for Virginia's alleged violations of the treaties, Mr. Breard would not be on death row today. Assuming the validity of this assertion, it is a tragic consequence of Virginia's failure to abide by the law. Nonetheless, it is still a *consequence* of the violation and not a continuing wrong. Although this Court is disenchanted by Virginia's failure to embrace and abide by the principles embodied in the Vienna Convention and Friendship Treaty, the Eleventh Amendment operates to bar retroactive relief. *Papasan,* 478 U.S. at 278, 106 S.Ct. at 2940; *Cory v. White,* 457 U.S. 85, 90, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982); *Edelman,* 415 U.S. at 666–69, 94 S.Ct. at 1357–59.

### B. District Court Review of State Court Proceedings

■ Federal district courts are courts of limited jurisdiction. With the exception of federal habeas review, district courts do not have jurisdiction to review final decisions of a state court. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 1841–42, 36 L.Ed.2d 439 (1973). The Fourth Circuit has stated the precise limits of this Court's powers. "If the ... claims presented to a United States district court are inextricably intertwined with the merits of a state court judgment, then the district court is in essence being called upon to review the state-court decision. This the district court cannot do." *Leonard v. Suthard,* 927 F.2d 168, 169–70 (4th Cir.1991) (internal citations and quotations omitted).

■ Yet, this is precisely what the plaintiffs request. They implore the Court to vacate Breard's conviction. Plaintiffs argue that this case is distinguishable from the cases above because this case is not an appeal. Paraguay and its officials do not request that the Court vacate Breard's sentence because of trial defects. Instead, plaintiffs are suing to vindicate their own rights under the treaties. Furthermore, this is the first forum in which plaintiffs have sought relief. This is an accurate statement of the procedural posture of this case. Nevertheless, it does not vitiate the legal principles enunciated by the Supreme Court and the Fourth Circuit. Simply stated, this Court has no authority to disturb a state court ruling regardless of the procedural posture of the litigants. That power rests solely with the Supreme Court of the United States. *Feldman,* 460 U.S. at 476, 103 S.Ct. at 1311–12.

## III. JUSTICIABILITY

### A. Paraguay's Standing under the Treaties

■ Defendants argue that Paraguay does not have standing. A plaintiff has standing to sue in federal court if: (1) the plaintiff has suffered an injury; (2) the defendants caused the injury; and (3) the injury is redressable by the Court. *Finlator, et al. v. Powers,* 902 F.2d 1158, 1160 (4th Cir. 1990). First, defendants insist that this Court has no power to redress the alleged treaty violations because the treaties do not provide a mechanism for litigation in federal court. Defendants have cited no authority for the proposition that the language of a treaty, or of any other contract, must set forth all applicable remedies. "Treaties are contracts between sovereigns." *Tabion v. Mufti,* 73 F.3d 535, 537 (4th Cir.1996). They have the same force as federal law. *United States v. Alvarez–Machain,* 504 U.S. 655, 668, 112 S.Ct. 2188, 2195–96, 119 L.Ed.2d 441 (1992). As a party to the treaties, Paraguay has standing to seek redress for violations. *Matta–Ballesteros v. Henman,* 896 F.2d 255, 259 (7th Cir.) (treaties are "designed to protect the sovereign interests of nations, and it is up to the offended nations to determine whether a violation of sovereign interests occurred and requires redress"), *cert. denied,* 498 U.S. 878, 111 S.Ct. 209, 112 L.Ed.2d 169 (1990). Absent any other limitations, this Court has the power to interpret the treaties and fashion an equitable remedy. *See, e.g., Tabion,* 73 F.3d 535 (4th Cir.1996) (construing the Vienna Convention); *In re Grand Jury,* 817 F.2d 1108 (4th Cir.1987) (same); *U.S. v. Chindawongse, et al,* 771 F.2d 840 (4th Cir.1985) (same).

■ Similarly, defendants maintain that this Court may not enforce the treaties because they are not "self-executing." The term "self-executing" has two distinct meanings in international law. *Committee of U.S. Citizens in Nicaragua v. Reagan,* 859 F.2d 929, 937 (D.C.Cir.1988) (citations omitted). Most frequently, the term is used to refer to a treaty that does not require implementing legislation before becoming federal law. *Id.* The parties agree that the treaties are "self-executing" under this definition. However, the term "self-executing" also denotes a trea-

ty that confers rights of action on private individuals. *Id.* Absent such language, a private party may not seek redress for treaty violations. *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 442, 109 S.Ct. 683, 692–93, 102 L.Ed.2d 818 (1989) (Geneva Convention on High Seas does not provide rights to private persons); *Goldstar (Panama) S.A. v. United States,* 967 F.2d 965, 968 (4th Cir.) (Hague Convention on War on Land does not provide rights to private persons), *cert. denied,* 506 U.S. 955, 113 S.Ct. 411, 121 L.Ed.2d 335 (1992). Defendants correctly note that the Vienna Convention and the Friendship Treaty are not "self-executing" in this sense. However, this observation has no bearing on the issues before this Court. Paraguay is not a private individual seeking enforcement of the treaty. It is an actual party to the contract and it has standing based on this status. *United States v. Rosenthal,* 793 F.2d 1214, 1232 (11th Cir.1986) ("[u]nder international law, it is the contracting foreign government that has the right to complain about a violation"), *cert. denied* 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987).

■ Finally, defendants argue that this action is an impermissible attempt to assert third-party standing. A third-party may not assert the rights of another unless the third party demonstrates that the real party in interest is unable to litigate by virtue of "inaccessibility, mental incompetence, or other disability." *Whitmore v. Arkansas,* 495 U.S. 149, 163–64, 110 S.Ct. 1717, 1727–28, 109 L.Ed.2d 135 (1990); *see also Powers v. Ohio,* 499 U.S. 400, 411, 111 S.Ct. 1364, 1370–71, 113 L.Ed.2d 411 (1991). Although Paraguay seeks relief that would also benefit Mr. Breard, it is not asserting Mr. Breard's rights. As indicated above, Paraguay is a signatory to the treaties. It is the real party in interest in this matter and it has standing to seek redress. *Matta–Ballesteros,* 896 F.2d at 259; *Rosenthal,* 793 F.2d at 1232.

### B. Mr. Dos Santos' Standing under § 1983

■ Only Jose Dos Santos, Consul General of the Republic of Paraguay, has asserted a claim under § 1983. In their motion to

dismiss, defendants assume that Mr. Dos Santos, a Paraguayan official, is not a "person" within the meaning of the statute. This assumption is erroneous. *See, e.g., United States v. Wong Kim Ark,* 169 U.S. 649, 678–81, 18 S.Ct. 456, 468–69, 42 L.Ed. 890 (1898) (consul is person "subject to the jurisdiction" of the United States); *see also, Plyler v. Doe,* 457 U.S. 202, 211–213, 102 S.Ct. 2382, 2391–93, 72 L.Ed.2d 786 (1982) (explaining that the term "within the jurisdiction of the United States" encompasses all persons within the territorial jurisdiction of the United States). Mr. Dos Santos is a proper plaintiff. Thus, his cause of action is not susceptible to a motion to dismiss for failure to state a claim based on defendants' theory.

*C. Appropriateness of Declaratory Relief*

 In defendants' opinion, this case is moot because they are no longer violating the treaties. As of April 1996, plaintiffs have been granted unfettered access to Mr. Breard. This turn of events does not render the case moot. "Voluntary cessation of allegedly illegal conduct does not deprive [a] tribunal of the power to hear and determine [a] case." *Commonwealth of Virginia ex. rel. Coleman v. Califano,* 631 F.2d 324, 326 (4th Cir.1980) (citing *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). In such cases, defendants have the burden of showing that they will not repeat the wrong. *Id.* Although defendants urge the Court to deny declaratory relief, they have not set forth one piece of evidence to support their heavy burden.[1] Thus, absent any jurisdictional limitations, this case is suitable for declaratory relief.

## IV. CONCLUSION

For the reasons stated above, this Court lacks subject matter jurisdiction over the issues presented. Accordingly, the Court GRANTS defendants' motion to dismiss.

---

1. In fact, there is evidence that the Commonwealth has disregarded the Vienna Convention on at least one other occasion. *See, Murphy v. Netherland,* No. 3:95cv856, Memorandum Opinion at 6–8 (E.D.Va. July 26, 1996) (discussing Virginia's failure to notify Mexico when Mr. Murphy was detained, tried, and convicted).