[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-16246

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 29, 2011
JOHN LEY
CLERK

D. C. Docket Nos. 07-22459-CV-AJ,
08-21063-CV-AJ

07-22459-CV-AJ:

ELOY ROJAS MAMANI,
ETELVINA ROMAS MAMANI,
SONIA ESPEJO VILLALOBOS,
HERNAN APAZA CUTIPA,
JUAN PATRICIO QUISPE MAMANI, et al.,

Plaintiffs-Appellees,

versus

JOSE CARLOS SANCHEZ BERZAIN,

Defendant-Appellant.

----------------------------------------------------------------------------------------------------

08-21063-CV-AJ:

ELOY ROYAS MAMANI,
Warisata, Bolivia,
ETELVINA RAMOS MAMANI,
Warisata, Bolivia,
SONIA ESPEJO VILLALOBOS,

El Alto, Bolivia,
JUAN PATRICIO QUISPE MAMANI,
El Alto, Bolivia,
TEOFILO BALTAZAR CERRO,
El Alto, Bolivia, et al.,

Plaintiffs-Appellees,

versus

GONZALO DANIEL SANCHEZ DE
LOZADA SANCHEZ BUSTAMANTE,

Defendant-Appellant.

————————————————

No. 10-13071

————————————————

D.C. Docket Nos. 1:07-cv-22459-AJ,
1:08-cv-21063-AJ

ELOY ROYAS MAMANI,
Warisata, Bolivia,
ETELVINA RAMOS MAMANI,
Warisata, Bolivia,
SONIA ESPEJO VILLALOBOS,
El Alto, Bolivia,
HERNAN APAZA CUTIPA,
JUAN PATRICIO QUISPE MAMANI,
El Alto, Bolivia, et al.,

Plaintiffs-Appellees,

versus

2

JOSE CARLOS SANCHEZ BERZAIN,
GONZALO SANCHEZ DE LOZADA SANCHEZ BUSTAMANTE,

                                        Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(August 29, 2011)

Before EDMONDSON and MARCUS, Circuit Judges, and FAWSETT,[*] District
Judge.


EDMONDSON, Circuit Judge.


Plaintiffs are the relatives of persons killed in Bolivia in 2003. All are

citizens and residents of Bolivia. Plaintiffs bring suit under the Alien Tort Statute

("ATS") against two of the former highest-level leaders of Bolivia--the former

president of Bolivia, Gonzalo Daniel Sánchez de Lozada Sánchez Bustamante

("President"), and the former defense minister of Bolivia, José Carlos Sánchez

Berzaín ("Defense Minister," and together with the President, "defendants")--for

decisions these leaders allegedly made while in high office. Given the indefinite

_____

[*] Honorable Patricia C. Fawsett, United States District Judge for the Middle District of
Florida, sitting by designation.

3

state of the pertinent international law and the conclusory pleadings, we decide that plaintiffs have failed to state a claim against these defendants.

## I.  BACKGROUND

Plaintiffs' claims arise out of a time of severe civil unrest and political upheaval in Bolivia--involving thousands of people, mainly indigenous Aymara people--which ultimately led to an abrupt change in government.  Briefly stated, a series of confrontations occurred between military and police forces and protesters.  Large numbers of protesters were blocking major highways, preventing travelers from returning to La Paz, and threatening the capital's access to gas and presumably other needed things.  Over two months, during the course of police and military operations to restore order, some people were killed and more were injured.  The President ultimately resigned his responsibilities, and defendants withdrew from Bolivia.  The entire complaint is attached as an appendix to this opinion.

Plaintiffs filed suit in federal district court against the President and Defense Minister personally but on account of their alleged acts as highest-level military and police officials.  Plaintiffs do not contend that defendants personally killed or

injured anyone.  In their corrected amended consolidated complaint ("Complaint"), plaintiffs brought claims under the ATS, asserting that defendants violated international law by committing extrajudicial killings; by perpetrating crimes against humanity; and by violating rights to life, liberty, security of person, freedom of assembly, and freedom of association.[1]  Plaintiffs sought compensatory and punitive damages.

Defendants moved to dismiss, asserting that the Complaint raised political questions; that the act-of-state doctrine barred resolution of the suit; and that defendants were immune from suit under common law head-of-state immunity and the Foreign Sovereign Immunities Act.  Defendants also argued that plaintiffs failed to state a claim under the ATS and that plaintiffs' state law claims failed under both Maryland and Florida law.

The United States government notified the district court that it had received a diplomatic note from the current government of Bolivia in which the government of Bolivia formally waived any immunity that defendants might otherwise enjoy. The United States government accepted the waiver but took no official position on the litigation.

---

[1] Plaintiffs also alleged violations of the Torture Victim Protection Act ("TVPA") and brought state law claims of wrongful death, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.  These claims are not at issue in this limited interlocutory appeal.

The district court granted in part and denied in part defendants' motion to dismiss.[2] Defendants petitioned this Court for permission to bring an interlocutory appeal. We granted defendants' petition and allowed them to appeal the issue of the applicability of the political question doctrine and the issue of whether plaintiffs had stated a claim under the ATS.[3] We now reverse and conclude that plaintiffs have failed to state a plausible claim for relief against these defendants.

## II. DISCUSSION

On appeal, defendants argue that plaintiffs' suit is barred by the political question doctrine, that plaintiffs have failed to state a claim under the ATS, and that defendants are immune from suit. We conclude that plaintiffs have failed to plead facts sufficient to state a claim under the ATS against these defendants.[4]

---

[2] The district court concluded that neither the political question doctrine nor the act-of-state doctrine barred resolution of the suit; that defendants were not immune to suit; that seven of the nine plaintiffs had pleaded facts sufficient to state a claim under the ATS for extrajudicial killings; that plaintiffs had pleaded facts sufficient to state a claim under the ATS for crimes against humanity; and that plaintiffs' wrongful death claims were timely. The district court concluded that plaintiffs had not stated a claim for violations of the rights to life, liberty, security of persons, freedom of assembly, and association under the ATS. The district court also concluded that plaintiffs' state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence were time-barred.

[3] Defendants appeal as of right the district court's decision of no immunity.

[4] We accept that the present government of Bolivia has waived any immunity that defendants might otherwise enjoy. For background, see In re Doe, 860 F.2d 40, 44-46 (2d Cir.

6

A.

The ATS is no license for judicial innovation.  Just the opposite, the federal

courts must act as vigilant doorkeepers and exercise great caution when deciding

either to recognize new causes of action under the ATS or to broaden existing

causes of action.  See Sosa v. Alvarez-Machain, 124 S. Ct. 2739, 2764 (2004).

"[C]ourts should require any claim based on the present-day law of nations to rest

on a norm of international character accepted by the civilized world and defined

with a specificity comparable to [violation of safe conducts, infringement of the

rights of ambassadors, and piracy]."  Id. at 2761-62 (emphasis added).  This

standard is a high one.

For a violation of international law to be actionable under the ATS, the

offense must be based on present day, very widely accepted interpretations of

international law: the specific things the defendant is alleged to have done must

---

1988) (cited in United States v. Noriega, 117 F.3d 1206, 1212 (11th Cir. 1997)); In re Grand Jury Proceedings, Doe No. 700, 817 F.2d 1108, 1110-11 (4th Cir. 1987).  This case presents no political question: plaintiffs' tort claims require us to evaluate the lawfulness of the conduct of specific persons towards plaintiffs' decedents, not to decide the legitimacy of our country's executive branch's foreign policy decisions.  Cf. Linder v. Portocarrero, 963 F.2d 332, 337 (11th Cir. 1992) (concluding plaintiffs' allegations of tort liability did not present a non-justiciable political question where "the complaint challenge[d] neither the legitimacy of the United States foreign policy toward the contras, nor d[id] it require the court to pronounce who was right and who was wrong in the Nicaraguan civil war").  See also Abebe-Jira v. Negewo, 72 F.3d 844, 848 (11th Cir. 1996).

7

violate what the law already clearly is. High levels of generality will not do.

To determine whether the applicable international law is sufficiently definite, we look to the context of the case before us and ask whether established international law had already defined defendants' conduct as wrongful in that specific context. See id. at 2768 n.27. Claims lacking sufficient specificity must fail. See id. at 2769 ("Whatever may be said for the broad principle [the plaintiff] advances, in the present, imperfect world, it expresses an aspiration that exceeds any binding customary rule having the specificity we require.").

We do not look at these ATS cases from a moral perspective, but from a legal one. We do not decide what constitutes desirable government practices. We know and worry about the foreign policy implications of civil actions in federal courts against the leaders (even the former ones) of nations. And we accept that we must exercise particular caution when considering a claim that a former head of state acted unlawfully in governing his country's own citizens. "It is one thing for American courts to enforce constitutional limits on our own State and Federal Governments' power, but quite another to consider suits under rules that would go so far as to claim a limit on the power of foreign governments over their own citizens, and to hold that a foreign government or its agent has transgressed those limits." Id. at 2763. Although "modern international law is very much concerned

8

with just such questions, and apt to stimulate calls for vindicating private interests in [ATS] cases," the Supreme Court instructs us that federal courts are to exercise "great caution" when deciding ATS claims. Id.

Broadly speaking, this Court has decided that "crimes against humanity" and "extrajudicial killings" may give rise to a cause of action under the ATS. See, e.g., Romero v. Drummond Co., 552 F.3d 1303, 1316 (11th Cir. 2008) (stating that an extrajudicial killing is actionable under the ATS where it is committed in violation of international law); Cabello v. Fernandez-Larios, 402 F.3d 1148, 1151-52 (11th Cir. 2005) (affirming judgment under the ATS for extrajudicial killing and crimes against humanity). But general propositions do not take us far in particular ATS cases. Allegations amounting to labels are different from well-pleaded facts, and we must examine whether what this Complaint says these defendants did--in non-conclusory factual allegations--amounts to a violation of already clearly established and specifically defined international law.

B.

To state a claim for relief under the ATS, a plaintiff must (1) be an alien (2) suing for a tort (3) committed in violation of the law of nations. Sinaltrainal v.

9

Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009).[5]  To avoid dismissal of an ATS claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).

Stating a plausible claim for relief requires pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged": this obligation requires "more than a sheer possibility that a defendant has acted unlawfully." Id.  While plaintiffs need not include "detailed factual allegations," they must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 127 S. Ct. at 1966).

Following the Supreme Court's approach in Iqbal, we begin by identifying conclusory allegations in the Complaint. See id. at 1950.  Legal conclusions without adequate factual support are entitled to no assumption of truth. See id.;

---

[5] The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C. § 1350.

<u>Randall v. Scott</u>, 610 F.3d 701, 709-10 (11th Cir. 2010).

In their "Preliminary Statement," plaintiffs begin the Complaint by alleging that defendants "order[ed] Bolivian security forces, including military sharpshooters armed with high-powered rifles and soldiers and police wielding machine guns, to attack and kill scores of unarmed civilians." Then, plaintiffs go on to allege in a conclusory fashion many other things: that defendants "exercised command responsibility over, conspired with, ratified, and/or aided and abetted subordinates in the Armed Forces . . . to commit acts of extrajudicial killing, crimes against humanity, and the other wrongful acts alleged herein"; that defendants "met with military leaders, other ministers in the Lozada government to plan widespread attacks involving the use of high-caliber weapons against protesters"; that defendants "knew or reasonably should have known of the pattern and practice of widespread, systematic attacks against the civilian population by subordinates under their command"; and that defendants "failed or refused to take all necessary measures to investigate and prevent these abuses, or to punish personnel under their command for committing such abuses."

These allegations sound much like those found insufficient by the Supreme Court in <u>Iqbal</u>: statements of legal conclusions rather than true factual allegations. Formulaic recitations of the elements of a claim, such as these, are conclusory and

11

are entitled to no assumption of truth. See Iqbal, 129 S. Ct. at 1951 (describing as conclusory allegations that "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin'" and that one defendant was a "principal architect" of and another was "'instrumental' in adopting and executing" the policy at issue (internal citations omitted)).

Plaintiffs here base their claims on allegations that defendants knew or should have known of wrongful violence taking place and failed in their duty to prevent it. Easy to say about leaders of nations, but without adequate factual support of more specific acts by these defendants, these "bare assertions" are "not entitled to be assumed true." Id. See also Sinaltrainal, 578 F.3d at 1268.

Next, we "consider the factual allegations in [plaintiffs'] complaint to determine if they plausibly suggest an entitlement to relief." Iqbal, 129 S. Ct. at 1951. Defendants were facing a situation where many of their opponents in Bolivia were acting boldly and disruptively (for example, blocking major highways to the nation's capital and forcing the Defense Minister out of at least one town), not merely holding--or talking about--political opinions. Plaintiffs pleaded facts sufficient to show that the President, in the face of significant conflict and

12

thousands of protesters, ordered the mobilization of a joint police and military operation to rescue trapped travelers; authorized the use of "necessary force" to reestablish public order; and authorized an executive decree declaring the transport of gas to the capital city to be a national priority.

Plaintiffs also pleaded facts sufficient to show that the Defense Minister, in the face of significant conflict and thousands of protestors, ordered the mobilization of a joint police and military operation to rescue trapped travelers; directed military personnel; authorized an executive decree declaring the transport of gas to the capital city to be a national priority; and, at times, accompanied military personnel in a helicopter from which shots were fired and directed them where to fire their weapons. Plaintiffs do not allege that a connection exists between the Defense Minister's directing of where to fire weapons and the death of plaintiffs' decedents.[6]

We must determine whether these facts, taken as a whole and drawing reasonable inferences in favor of plaintiffs, are sufficient to make out a plausible claim that <u>these defendants</u> did things that violated established international law and gave rise to jurisdiction under the ATS. We do not accept that, even if some

---

[6] That the Defense Minister may have been directing military personnel <u>not</u> to fire at uninvolved civilians is consistent with the pleadings about his helicopter directives. <u>See Iqbal</u>, 129 S. Ct. at 1950-51 (discussing pleadings that are compatible with lawful inferences).

13

soldiers or policemen committed wrongful acts, present international law embraces strict liability akin to respondeat superior for national leaders at the top of the long chain of command in a case like this one. But before we decide who can be held responsible for a tort, we must look to see if an ATS tort has been pleaded at all.

We look first to plaintiffs' claims of extrajudicial killing, relying--as did plaintiffs--on the TVPA definition for guidance.[7] Briefly stated, the TVPA states that an extrajudicial killing must be "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples." TVPA § 3(a), 28 U.S.C. § 1350.

The district court "conclude[d] that seven of the plaintiffs . . . stated claims for extrajudicial killings by alleging sufficient facts to plausibly suggest that the killings were targeted." D. Ct. Order 25. Facts suggesting some targeting are not enough to state a claim of extrajudicial killing under already established and specifically defined international law. But even if the Complaint includes factual

---

[7] Extrajudicial killings are actionable under the TVPA if the killing falls within the statutory definition, and under the ATS if committed "in violation of the law of nations." Romero, 552 F.3d at 1316. We assume for purposes of this discussion that an extrajudicial killing falling within the statutory definition of the TVPA would also likely violate established international law. But this may not be true under all circumstances. See Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1252 (11th Cir. 2005) ("[N]either Congress nor the Supreme Court has urged us to read the TVPA as narrowly as we have been directed to read the Alien Tort Act generally.").

allegations that are consistent with a deliberated killing by someone (for example, the actual shooters), not all deliberated killings are extrajudicial killings.

Plaintiffs allege no facts showing that the deaths in this case met the minimal requirement for extrajudicial killing--that is, that plaintiffs' decedents' deaths were "deliberate" in the sense of being undertaken with studied consideration and purpose. On the contrary: even reading the well-pleaded allegations of fact in the Complaint in plaintiffs' favor, each of the plaintiffs' decedents' deaths could plausibly have been the result of precipitate shootings during an ongoing civil uprising.[8]

Given these pleadings, alternative explanations (other than extrajudicial killing) for the pertinent seven deaths easily come to mind; for instance, the alleged deaths are compatible with accidental or negligent shooting (including mistakenly identifying a target as a person who did pose a threat to others), individual motivations (personal reasons) not linked to defendants, and so on. For

_____

[8] The Complaint may possibly include factual allegations that seem consistent with ATS liability for extrajudicial killing for someone: for example, the shooters. But to decide whether plaintiffs have stated a claim for extrajudicial killing against these defendants, we must look at the facts connecting what these defendants personally did to the particular alleged wrongs. For extrajudicial killings, we do not accept the following statement of the district court as correct as a matter of international law or of federal court pleading: "The plaintiffs here allege that their relatives were killed by the Bolivian armed forces and that at all relevant times the armed forces acted under the authority of [defendants]. This is sufficient." D. Ct. Order 27 (citation omitted). We believe it is insufficient. We do not, in principle, rule out aiding and abetting liability or conspiratorial liability and so on under the ATS, but the pleadings here are too conclusory to make out such a claim against these defendants.

15

background, see Iqbal, 129 S. Ct. at 1950-51. Plaintiffs have not pleaded facts sufficient to show that anyone--especially these defendants, in their capacity as high-level officials--committed extrajudicial killings within the meaning of established international law. See generally Belhas v. Ya'alon, 515 F.3d 1279, 1293 (D.C. Cir. 2008) (Williams, J., concurring) ("[Plaintiffs] point to no case where similar high-level decisions on military tactics and strategy during a modern military operation have been held to constitute . . . extrajudicial killing under international law.").[9]

Nor have plaintiffs pleaded facts sufficient to state a claim for a crime against humanity pursuant to established international law. "[T]o the extent that crimes against humanity are recognized as violations of international law, they occur as a result of 'widespread or systematic attack' against civilian populations." Aldana, 416 F.3d at 1247 (quoting Cabello, 402 F.3d at 1161).

---

[9] We note the district court said in its Order that "it is not clear what constitutes an extrajudicial killing." D. Ct. Order 24. We agree. When the law applicable to the circumstances is unclear, we have been warned not to create or broaden a cause of action. See Sosa, 124 S. Ct. at 2766 n.21 (noting the "requirement of clear definition" for seeking relief from a violation of customary international law). The only case from this Circuit to give detailed consideration to the merits of a claim of extrajudicial killing under the ATS was different and clearer than this case. In Cabello, we concluded that there was sufficient evidence to support a jury verdict where the former military officer defendant personally commanded a "killing squad" that killed civilian prisoners who had opposed the military junta; where the defendant assisted in selecting the plaintiff's decedent (a political prisoner) for execution after reviewing his prisoner file; and where the political prisoner was then tortured and killed by the defendant. Cabello, 402 F.3d at 1159-60. The specific targeting of the victim based on his political beliefs, direct involvement of the defendant, and premeditated and deliberate circumstances of the victim's death set Cabello apart from the facts alleged in this case.

16

The scope of what is, for example, widespread enough to be a crime against humanity is hard to know given the current state of the law.

The Complaint's factual allegations show that defendants ordered military and police forces to restore order, to rescue trapped travelers, to unblock roads (including major highways), and to ensure the capital city's access to gas and presumably to other necessities during a time of violent unrest and resistance. According to plaintiffs, the toll--one arising from a significant civil disturbance--was fewer than 70 killed and about 400 injured to some degree, over about two months. The alleged toll is sufficient to cause concern and distress. Nevertheless, especially given the mass demonstrations, as well as the threat to the capital city and to public safety, we cannot conclude that the scale of this loss of life and of these injuries is sufficiently widespread--or that wrongs were sufficiently systematic, as opposed to isolated events (even if a series of them)--to amount definitely to a crime against humanity under already established international law.

Allowing plaintiffs' claims to go forward would substantially broaden, in fact, the kinds of circumstances from which claims may properly be brought under the ATS. As we understand the established international law that can give rise to federal jurisdiction under the ATS, crimes against humanity exhibit especially wicked conduct that is carried out in an extensive, organized, and deliberate way,

17

and that is plainly unjustified. It is this kind of hateful conduct that might make someone a common enemy of all mankind. But given international law as it is now established, the conduct described in the bare factual allegations of the Complaint is not sufficient to be a crime against humanity under the ATS.

The possibility that--<u>if</u> even a possibility has been alleged effectively--these defendants acted unlawfully is not enough for a plausible claim. And the well-pleaded facts in this case do not equal the kind of conduct that has been already clearly established by international law as extrajudicial killings or as crimes against humanity. Plaintiffs "would need to allege more by way of factual content to 'nudg[e]' [their claims] . . . 'across the line from conceivable to plausible.'" <u>Iqbal</u>, 129 S. Ct. at 1952 (quoting <u>Twombly</u>, 127 S. Ct. at 1974). The Complaint does not state a plausible claim that these defendants violated international law, and these claims must be dismissed.

## III. CONCLUSION

The Complaint in this case has all of the flaws against which <u>Iqbal</u> warned. In addition, the case runs into the limitations that <u>Sosa</u> set for ATS cases: judicial creativity is not justified. <u>See Sosa</u>, 124 S. Ct. at 2763. For ATS purposes, no tort

has been stated.

Plaintiffs, through their claims, seek to have us broaden the offenses of extrajudicial killings and crimes against humanity. Given the context, the pleadings are highly conclusory; and the international law applicable to the specific circumstances is not clearly defined. As we see it, the criteria to judge what is lawful and what is not lawful, especially for national leaders facing thousands of people taking to the streets in opposition, is largely lacking.

In a case like this one, judicial restraint is demanded. See id. at 2762. The ATS is only a jurisdictional grant; it does not give the federal courts "power to mold substantive law." Id. at 2755. Because the pertinent international law is not already clear, definite, or universal enough to reach the alleged conduct (especially after the pleadings are stripped of conclusory statements), we decline to expand the kinds of circumstances that may be actionable under the ATS to cover the facts alleged in this case. The denial of the motion to dismiss these claims is REVERSED.

REVERSED and REMANDED with instructions to dismiss.